**FILED**
**2nd JUDICIAL DISTRICT COURT**
**Bernalillo County**
**7/25/2019 8:46 AM**
**James A. Noel**
**CLERK OF THE COURT**
**Catherine Chavez**

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT**

**SANDRA VILLELA, as Special Administrator**
**of the Estate of Vicente Antonio Villela, and as**
**Personal Representative of the Wrongful Death**
**Estate of Vicente Antonio Villela, and GUADALUPE**
**MOTA, Individually and as next-friend of the minor**
**children Abril Sofia Villela and Julio Vicente Villela,**
                              **Plaintiffs,**
**v.**                                                      D-202-CV-2019-05875

**BERNALILLO COUNTY, and**
**CORRECTIONS OFFICER LT. KEITH BRANDON, and**
**CORRECTIONS OFFICER LT. ERICA GUTIERREZ, and**
**CORRECTIONS OFFICER JOHN SANDOVAL, and**
**CORRECTIONS OFFICER SETH ROMERO, and**
**CORRECTIONS OFFICER DAVID HUNTER, and**
**CORRECTIONS OFFICER SEAN ADDY, and**
**CORRECTIONS OFFICER JESSE THOMPSON, and**
**CORRECTIONS OFFICER LEVI CAIZZA, and**
**CORRECTIONS OFFICER ARMANDO GRANILLO,**
**collectively both Individually and in their Official Capacities,**
                              **Defendants**.

**COMPLAINT FOR VIOLATION OF NEW MEXICO TORT CLAIMS ACT,**
**FOR WRONGFUL DEATH, AND FOR § 1983 VIOLATIONS OF CIVIL RIGHTS**

     **THE PLAINTIFFS** Sandra Villela, as Personal Representative of the Estate of Vicente

Antonio Villela, and as Personal Representative of the Wrongful Death Estate of Vicente

Antonio Villela, and Guadalupe Mota, Individually and as next-friend of the minor children

Abril Sofia Villela and Julio Vicente Villela, for their Complaint for Violation of New Mexico

Tort Claims Act, for Wrongful Death, and for § 1983 Violations of Civil Rights, state as follows:

EXHIBIT

A

1

## JURISDICTION AND VENUE

1. This matter concerns the physical mistreatment of Vicente Antonio Villela, while he was detained at the Bernalillo County Metropolitan Detention Center on February 2, 2019, which directly resulted in his death.

2. At all times pertinent hereto Vicente A. Villela was a resident of Bernalillo County, New Mexico.

3. Plaintiff Sandra Villela is a resident of Bernalillo County; she is the sister of Vicente Villela, and brings this action as Special Administrator of the Estate of Vicente Villela and as Personal Representative of the Wrongful Death Estate of Vicente Villela.

4. Plaintiff Guadalupe Mota is a resident of Bernalillo County; she has been the domestic partner of Vicente Villela for more than seven years and is the mother of his two minor children Abril Sofia Villela and Julio Vicente Villela.

5. The Defendant Bernalillo County is an organized county located within the State of New Mexico, which at all times pertinent hereto acted through its employees and agents who operate the Bernalillo County Metropolitan Detention Center.

6. Defendant Lt. Brandon is an employee of Bernalillo County; he was working as a Corrections Officer at the Bernalillo County Metropolitan Detention Center at the time of the incident giving rise to this matter and was the supervisor of the correction officers involved in the incident giving rise to this matter.

7. Defendant Lt. Erica Gutierrez is an employee of Bernalillo County; she was working as a Corrections Officer at the Bernalillo County Metropolitan Detention Center at the time of the incident giving rise to this matter and was a supervisor involved in the incident giving rise to this matter.

2

8. Defendant Corrections Officer John Sandoval is an employee of Bernalillo County; he was working as a Corrections Officer at the Bernalillo County Metropolitan Detention Center at the time of the incident giving rise to this matter.

9. Defendant Corrections Officer Seth Romero is an employee of Bernalillo County; he was working as a Corrections Officer at the Bernalillo County Metropolitan Detention Center at the time of the incident giving rise to this matter.

10. Defendant Corrections Officer David Hunter is an employee of Bernalillo County; he was working as a Corrections Officer at the Bernalillo County Metropolitan Detention Center at the time of the incident giving rise to this matter.

11. Defendant Corrections Officer Sean Addy is an employee of Bernalillo County; he was working as a Corrections Officer at the Bernalillo County Metropolitan Detention Center at the time of the incident giving rise to this matter.

12. Defendant Corrections Officer Jesse Thompson is an employee of Bernalillo County; he was working as a Corrections Officer at the Bernalillo County Metropolitan Detention Center at the time of the incident giving rise to this matter.

13. Defendant Corrections Officer Levi Caizza is an employee of Bernalillo County; he was working as a Corrections Officer at the Bernalillo County Metropolitan Detention Center at the time of the incident giving rise to this matter.

14. Defendant Corrections Officer Armando Granillo is an employee of Bernalillo County; he was working as a Corrections Officer at the Bernalillo County Metropolitan Detention Center at the time of the incident giving rise to this matter.

15. Defendants Brandon, Gutierrez, Sandoval, Romero, Hunter, Addy, Thompson, Caizza and Granillo are collectively referred to herein as the "Corrections Officer Defendants."

16. The Corrections Officer Defendants are each sued herein in both their individual and official capacities.

17. Each of the named natural person Defendants acted, and was acting, in their official capacity pursuant to the laws, ordinances, regulations and customs of the County of Bernalillo, New Mexico, and each is considered as a "state actor."

18. State and federal courts share concurrent jurisdiction over Section 1983 claims for the denial of federal constitutional rights. *Carter v. City of Las Cruces*, 1996-NMCA-47, ¶5, 121 N.M. 580, 582, citing to *Martinez v. California*, 444 U.S. 277, 283 n.7, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980).

19. Title 42 U.S.C. §1983 provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

20. All circumstances forming the basis of this matter occurred in Bernalillo County, New Mexico.

21. Jurisdiction and Venue is proper before the Second Judicial District Court.

### FACTS

22. At all times relevant hereto, Vicente Villela was detained in the custody of the Bernalillo County Metropolitan Detention Center ("MDC").

23. Vicente Villela was arrested on February 2, 2019 and booked into the MDC.

24. During booking, Vicente Villela informed MDC medical personnel that he was "very high" on methamphetamines.

25. After he was booked into the MDC, Vicente Villela was placed on clinical seclusion in a closed general population cell (cell 5) in the booking area; no other inmate was in the cell.

26. While Vicente Villela was in cell 5, he was observed to be agitated and paranoid, stating to MDC medical personnel that he thought he was going to be attacked.

27. While Vicente Villela was in cell 5, he informed MDC Corrections Officer Lt. Erica Gutierrez that he was very high on methamphetamine.

28. During booking, Vicente Villela spoke with Defendant Lt. Brandon; based upon this conversation Lt. Brandon was aware that Vicente Villela was very high, yet he did not relay that information to any other MDC correctional officers.

29. After Vicente Villela was placed in a cell, Defendant Lt. Brandon called the on-duty mental health personnel to assess Vicente Villela.

30. It was apparent to all of the individual Corrections Officer Defendants that Vicente was under the influence of methamphetamine and in a state of severe agitation.

31. While Vicente Villela was in the closed cell under clinical seclusion, he posed no potential threat to the safety of the MDC Corrections officers and other inmates.

32. At approximately 9:15 p.m., a "stack team" of MDC correction officers was formed for the purpose of forcefully extracting Vicente Villela from cell 5; each team member was outfitted in protective gear and each was assigned a particular limb of Vicente Villela's to control.

33. MDC Corrections officers on the "stack team" were initially going to utilize a "use of force" protocol to remove Vicente Villela from cell 5 in order to move him to a different location in the MDC facility.

34. While the "stack team" waited during an approximately one-half hour period for Vicente Villela to "cool down" per instructions of the on-duty mental health professional, all of the Corrections Officer Defendants who were members of the team became aware that Vicente Villela was under the influence of methamphetamines.

35. The "stack team" was not required to utilize any anticipated force to remove Vicente Villela from cell 5; he willingly complied and was escorted to the showers where he showered and then dressed out into MDC clothing, being placed in handcuffs only for escorting to PAC 1.

36. While being escorted to PAC 1, Vicente Villela began exhibiting psychotic behavior including screaming his belief that someone was out to kill him; he made statements such as "he's going to get me" and stated that he did not want to go into the PAC 1 because he believed that people were trying to kill him.

37. In response to Vicente Villela's behavior, the Corrections officer defendants forced him onto the floor, placed him in 4-point shackles and escorted him to the PAC 1 area.

38. While Vicente Villela was on the floor and being placed in shackles, he asked for water. This request was denied.

39. After being placed in 4-point shackles, Vicente Villela was compliant while being escorted to the PAC 1 area.

40. Noting Vicente Villela's behavior while he was being escorted to the PAC 1, the on-duty mental health professional was of the opinion that Vicente Villela was either psychotic or under the influence of a stimulant or narcotic.

41. Upon arriving at the sally port to the PAC 1 area, Vicente Villela again commented his belief that someone was "out to get him."

42. While Vicente Villela was being walked over to cell 1 in the PAC 1 area from the sally port, he was compliant and posed no threat to any Corrections officer or other inmate.

43. As Vicente Villela was walked into cell 1, a Corrections officer defendant supervisor instructed the "stack team" to place Vicente Villela face down on a mattress in the cell in order to remove the 4 point shackles.

44. In response to the instructions of the "stack team" for Vicente Villela to lay face down on a mattress in cell 1, Vicente Villela complied.

45. While Vicente Villela was face down on a mattress in cell 1, still restrained in 4 point shackles, he posed no potential threat to the safety of the MDC Corrections officers and other inmates.

46. When the defendant correction officers began to remove the 4-point shackles, Vicente Villela initially willingly cooperated.

47. The Corrections Officer Defendants positioned themselves at each of Vicente Villela's limbs and at his head, ostensibly in order to control him while the 4-point shackles are removed; Defendant CO Sandoval stood over Vicente Villela and placed his right knee on Vicente's back.

48. At some point while the defendant correction officers were removing the 4-point shackles, a struggle ensued, as Vicente Villela began exhibiting paranoid behavior and screaming "c'mon bro he's gonna get me."

49. At this point, all of the Corrections Officer Defendants were well aware that Vicente Villela was in an extreme state of severe agitation, as that term is defined in the MDC's "Use of Force" policy.

50. Any noncompliance by Vicente Villela of the verbal orders of the Corrections Officer Defendants posed no threat to the Corrections Officer Defendants, to other inmates or to prison security.

51. As Vicente Villela exhibited extreme signs of paranoia, Defendant Lt. Brandon stated to Defendant Sandoval to "sit on him, now Sandoval."

52. In response to the order from Defendant Lt. Brandon, Defendant CO Sandoval repositioned himself and put his left knee centered on Vicente's back and placed his entire weight onto his knee.

53. Defendant CO Sandoval then executed three knee strikes with his right knee to Vicente's lower back area.

54. While Defendant CO Sandoval was on top of Vicente Villela with his full weight on his left knee, Vicente Villela stated multiple times "I can't breathe, I can't breathe."

55. Despite being aware that Vicente Villela could not breath, Defendant CO Sandoval did not remove his knee or any of his weight from Vicente's back.

56. In response to Vicente Villela's pleas for breath, Defendant Lt. Brandon acknowledged to Vicente he understood that Vicente could not breathe, and said "right, they are having to hold you down, dude you need to stop."

57. Despite being aware that Vicente Villela could not breath, none of the other Corrections Officer Defendants - all who witnessed the event and heard Vicente's multiples pleas for air to breath - took any action to ensure Defendant CO Sandoval removed himself from Vicente in order for Vicente to breath.

58. After Vicente Villela pleaded for air to breath, he stopped screaming and his breath faded to shallow gasps; all the while Defendant CO Sandoval was on top of Vicente Villela, continuing to place his full weight on Vicente's back.

59. After Vicente Villela pleaded for air to breath, after he had stopped screaming and after his breath had faded to shallow gasps, the Corrections Officer Defendants became aware that he was unconscious, and even being aware that he was unconscious, Defendant CO Sandoval continued to maintain his position on top of Vicente Villela, continuing to place his full weight on Vicente's back.

60. Despite being aware that Vicente Villela had stopped saying anything and was no longer struggling with the Corrections Officer Defendants, the Corrections Officer Defendants continued to hold him down and Defendant CO Sandoval continued to place all of his weight on Vicente's back.

61. After Vicente Villela became unconscious, the Corrections Officer Defendants failed to continuously monitor his breathing, and failed to timely notice that he had stopped breathing.

62. When the MDC medical personnel arrived before a "Code Blue" was called, the Corrections Officer Defendants should have been aware that Vicente Villela was not breathing and had no pulse.

63. When the MDC medical personnel arrived before a "Code Blue" was called, Defendant Lt. Brandon only asked these individuals if they wanted to enter the cell where Vicente Villela was laying, instead of requesting assistance from them as Vicente Villela was unconscious. This delayed his receiving appropriate medical treatment.

64. MDC Corrections Officers are taught that if they are on the back of an individual as part of keeping an individual under control, they must constantly monitor the individual and not restrict their breathing in order to prevent any type of mechanical or positional asphyxiation.

65. After Vicente Villela stopped saying anything and was no longer struggling, the Corrections Officer Defendants continued, without justification, to hold him down and Defendant CO Sandoval continued to place all of his weight on Vicente's back.

66. The Corrections Officer Defendants had no justification to continue to hold Vicente down and CO Sandoval continue to place all of his weight on Vicente's back after Vicente had stopped breathing and struggling.

67. After Vicente Villela stopped saying anything and was no longer struggling, the actions of the Corrections Officer Defendants in continuing to hold Vicente down and CO Sandoval continuing to place all of his weight on Vicente's back could not have plausibly been thought to be necessary to maintain order in the MDC or to maintain the safety of the Corrections Officer Defendants or inmates.

68. Long after the Corrections Officer Defendants were aware that Vicente Villela had stopped breathing and he had no pulse, a "Code Blue" was called and attempts at CPR were made by certain of the Corrections Officer Defendants.

69. In response to the "Code Blue," MDC medical personnel arrived at cell 1 in the PAC 1 area and continued CPR upon Vicente Villela.

70. Upon arriving at cell 1 in the PAC 1 area, MDC Nurse Jennifer Westphall noted that Vicente Villela's pupils were fixed and dilated, he appeared blue, and his body was cold.

71. MDC Nurse Jennifer Westphall stated to the investigating BCSO Officer she knew as soon as she touched Vicente that he was not going to recover.

10

72. An autopsy of Vicente Villela conducted by the New Mexico Office of Medical Investigator determined that Vicente's cause of death was mechanical asphyxiation caused by the MDC Corrections Officer Defendants.

73. Upon information and belief, the opinion of the New Mexico Office of Medical Investigator regarding Vicente Villela's cause of death is that even if no drugs had been in Vicente Villela's system, the cause of death would still be mechanical asphyxiation caused by the MDC Corrections Officer Defendants.

74. Vicente Villela endured substantial pain while the Corrections Officer Defendants held him down and Defendant CO Sandoval placed all of his weight on Vicente's back, making it impossible for Vicente Villela to breath.

75. The pain endured by Vicente Villela was unnecessary and wanton.

76. The force applied to Vicente Villela, which directly resulted in his death, could not have plausibly been thought to be necessary to maintain order in the MDC or to maintain the safety of the Corrections Officer Defendants or inmates.

## CLAIMS

### Count I
### Violation of New Mexico Tort Claims Act

77. Plaintiffs incorporate the proceeding paragraphs as if set forth herein in full.

78. Bernalillo County was timely provided an NMSA 1978, §41-4-16 Tort Claims Act Notice.

79. Under the New Mexico Tort Claims Act, the Defendant Bernalillo County is not immune from suit under the facts of this case.  See i.e. NMSA 1978, §§ 41-4-9 & 41-4-10.

80. The Corrections Officers Defendants are "law enforcement officers" and "public employees" as those terms are defined under Section 41-4-3(D) & (F) of the New Mexico Tort Claims Act [NMSA 1978, §§41-4-1 through 41-4-27].

81. The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties. NMSA 1978, 41-4-12.

82. At all times pertinent to the facts set forth herein, the Corrections Officer Defendants were employees of the Bernalillo County Metropolitan Detention Center, and were agents and employees of Defendant Bernalillo County and were authorized by Defendant Bernalillo County to operate the Bernalillo County MDC and at all times were acting in the scope of their employment.

83. The actions and inactions of the Corrections Officer Defendants were done in both their individual and their official capacity as agents and employees of the Defendant Bernalillo County, and therefore the Defendant Bernalillo County is liable for the actions set forth herein conducted in their official capacity.

84. Defendant Bernalillo County is responsible for the acts of the Bernalillo County MDC corrections officers and is liable for the acts of the corrections officers employed at the Bernalillo County MDC, including the Corrections Officer Defendants.

85. The amount of force used by the Corrections Officer Defendants was inappropriate and unjustified for the circumstances.

86. The actions of the Corrections Officer Defendants were done knowingly, intentionally, without justification, contrary to the policies of MDC, the training received by each of the Corrections Officer Defendants and the U.S. Constitution, were done for no legitimate penological purpose.

87. Due to the intentional actions of the Corrections Officer Defendants, Vicente Villela was subjected to excessive and excruciating pain, and received bodily injuries that directly caused his death.

88. Each of the Corrections Officer Defendants knew or reasonably should have known that their conduct would lead to personal injury of Vicente Villela and to the deprivation of Vicente Villela's constitutional rights, not only by their individual actions but also by the actions of other of the Corrections Officer Defendants.

89. The actions the Corrections Officer Defendants resulted in personal and bodily injury to Vicente Villela and directly caused the wrongful death of Vicente Villela, and constitute violations of New Mexico's Tort Claims Act.

90. The Estate of Vicente Villela and the Wrongful Death Estate of Vicente Villela are entitled to an award of damages for Defendants' violations of the New Mexico Tort Claims Act.

**Count II**
**Excessive Force**

91. Plaintiffs incorporate the proceeding paragraphs as if set forth herein in full.

92. At all times relevant hereto, Vicente Villela was detained at the Bernalillo County MDC following his arrest without a warrant and prior to any probable cause hearing.

93. The Due Process Clause of the U.S. Constitution protects a detainee such as Vicente Villela from the use of excessive force that amounts to punishment.

94. Vicente Villela had a substantive due process right under either the Fourth or Fourteenth Amendment to be free from physical abuse and excessive force, and to bodily integrity.

95. The Corrections Officer Defendants knew that use of force against inmates is designed to be a last resort.

96. The Corrections Officer Defendants knew that de-escalation should be employed prior to any force being used against inmates.

97. The Corrections Officer Defendants knew that a natural human response to being hurt is to scream and yell out in pain.

98. The Corrections Officer Defendants knew that a natural human response to being hurt is to struggle against the individuals causing the pain.

99. The Corrections Officer Defendants knew that these natural human responses are especially true when a person is under the influence of drugs and/or acting in a fashion exhibiting severe agitation, as that term is defined in MDC's Use of Force policy.

100. The Bernalillo County MDC has in place a "Use of Force" Policy, which established guidelines for the appropriate use of force and restraints to be used in order to maintain and regain control of inmates.

101. The MDC's "Use of Force" Policy requires that force is to be used only after attempts to gain an inmate's voluntary cooperation are unsuccessful.

102. The MDC's "Use of Force" Policy expressly prohibits "excessive force" or "unnecessary force."

14

103.    The MDC's "Use of Force" Policy defines "excessive force or unnecessary force" as "force applied against an inmate that is greater than what is reasonable to control the inmate and gain compliance; continuing to apply force after the inmate complies; force that is applied after the inmate is restrained and compliant; force applied as a means of punishment or retaliation; force applied for the sole purpose of inflicting pain on an inmate; or using force before using confrontation avoidance techniques and other alternatives to the use of force, when the circumstances permit the use of such techniques and alternatives

104.    The MDC's "Use of Force" Policy expressly prohibits "using force as the first response to an inmate's failure to follow instructions where there is no risk of harm to MDC staff or other inmates."

105.    The MDC's "Use of Force" Policy expressly prohibits "using force on a restrained inmate unless such actions are reasonably necessary to prevent the inmate from harming any person or unlawfully damaging property."

106.    The MDC's "Use of Force" Policy expressly prohibits "using force against an inmate after the inmate has ceased to offer resistance."

107.    The MDC's "Use of Force" Policy expressly requires MDC Corrections officers to "first use alternatives to the use of force in an attempt to resolve the conflict if there is no immediate risk of harm to anybody, and there is no immediate risk of destruction of property."

108.    The MDC's "Use of Force" Policy defines "Severe Agitation" as "a state of extreme mental and physiological excitement. It is characterized by any of the following symptoms: exceptional anxiety and hyperactivity, overheating, excessive tearing of the eyes, hostility,

"superhuman" strength, aggression, acute paranoia and endurance without apparent fatigue. Subjects in a state of severe agitation are at an increased risk of sudden death.

109.    It was apparent to all of the Corrections Officer Defendants that Vicente Villela was in a state of "severe agitation."

110.    Based upon the training received by the Corrections Officer Defendants, all of these individuals were aware that Vicente Villela was at an increased risk of sudden death.

111.    Despite being aware that due to being in a state of severe agitation Vicente Villela was at an increased risk of sudden death, the Corrections Officer Defendants continued to utilize excessive and unnecessary force, which directly caused his death.

112.    The Corrections Officer Defendants failed to follow the MDC's Use of Force policy.

113.    Applying pressure to Vicente Villela's upper back, once he was handcuffed and his legs restrained, was constitutionally unreasonable due to the significant risk of positional asphyxiation associated with such actions.

114.    The Tenth Circuit has held federal law is clear that putting substantial or significant pressure on an individual's back while that person is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force. *Weigel v. Broad,* 544 F.3d. 1143.

115.    The amount of force used against Vicente Villela by the Corrections Officer Defendants was objectively and constitutionally unreasonable and excessive.

116.    Each of the Corrections Officer Defendants is responsible for the excessive use of force, as each of the Corrections Officer Defendants participated in the use of excessive force.

117.    The Estate of Vicente Villela is entitled to an award of damages for the Corrections Officer Defendants' excessive use of force utilized against Vicente Villela in violation of the U.S. Constitution.

## Count III
## Failure to Intervene

118.    Plaintiffs incorporate the proceeding paragraphs as if set forth herein in full.

119.    The Corrections Officer Defendants working at the MDC had a duty to intervene when they observed another corrections officer using excessive force in violation of an inmate's constitutional rights.

120.    Each of the Corrections Officer Defendants had a clearly established duty to intervene to stop the excessive force of other of the Corrections Officer Defendants, regardless of whether any one individual's conduct was excessive.

121.    The Corrections Officer Defendants owed a duty to inmates such as Vicente Villela to intervene when they observed another Corrections Officer violating his constitutional rights.

122.    Each of the Corrections Officer Defendants was aware that Vicente Villela faced a substantial risk of serious harm and each of the Corrections Officer Defendants knew of and disregarded the risk.

123.    The Corrections Officer Defendants had a duty to intervene when they observed Defendant CO Sandoval using excessive force upon Vicente Villela in violation of his clearly established constitutional rights.

124.    The Corrections Officer Defendants all observed and had reason to know of the constitutional violation of Vicente Villela's well-established constitutional rights by Defendant CO Sandoval and they had a realistic opportunity to intervene on Vicente Villela's behalf, but failed to do so.

125.    The failure of the Corrections Officer Defendants to intervene when they observed another Corrections officer using excessive force in violation of Vicente Villela's constitutional rights breached this duty.

126.    By failing to intervene when they observed the excessive force being used by Defendant CO Sandoval upon Vicente Villela, the remaining Corrections Officer Defendants knowingly permitted the unjustified use of excessive force in the course of their scope of duties.

127.    The disregard of the substantial harm to Vicente Villela's health and life shown by the Corrections Officer Defendants demonstrates recklessness and/or deliberate indifference.

128.    Due directly to the breach of the duty owed to Vicente Villela by the Corrections Officer Defendants to intervene to prevent excessive force, Vicente Villela suffered excruciating pain, substantial harm and death.

129.    The Estate of Vicente Villela is entitled to an award of damages for the failure of the Corrections Officer Defendants to intervene on Vicente Villela's behalf when they observed the excessive use of force in violation of the U.S. Constitution.

130.    Plaintiffs Guadalupe Mota, individually and as next friend of her two minor children, are entitled to an award of damages for the failure of the Corrections Officer Defendants to intervene on Vicente Villela's behalf when they observed the excessive use of force in violation of the U.S. Constitution.

**Count IV**
**Wrongful Death under NMSA 1978, §41-2-1, et seq.**

131.    Plaintiffs incorporate the proceeding paragraphs as if set forth herein in full.

132.    The actions the Corrections Officer Defendants directly resulted in the death of Vicente Villela.

133.    The actions the Corrections Officer Defendants resulting in the death of Vicente Villela were in violation of both New Mexico's Tort Claims Act and New Mexico's Wrongful Death Act, NMSA 1978, 41-2-1, et. seq.

134.    The Wrongful Death Estate of Vicente Villela is entitled to an award of damages due directly to the actions of the Corrections Officer Defendants that resulted in the death of Vicente Villela.

**Count V**
**Loss of Consortium**

135.    Plaintiff incorporates the proceeding paragraphs as if set forth herein in full.

136.    "Loss of consortium is a type of personal injury damage because damages for consortium are damages for the plaintiff's emotional distress due to the harm to a sufficiently close relationship. ... Loss of consortium can be asserted against New Mexico government actors, despite that it is not specifically mentioned in the [TCA], provided that the underlying tort— the one that caused direct physical injury—itself triggers an immunity waiver. . . . Loss of consortium damages are derivative in nature because they arise from a physical injury upon another person.   Therefore, both the injury and the tort from which the children's claim for loss of consortium damages derive are specifically enumerated under Section 41-4-12." *Thompson v. City of Albuquerque*, 2017-NMSC-021, ¶¶8 & 9, 397 P.3d 1279.

137.    Unmarried persons are not precluded from recovering for loss of consortium, when the relevant factors indicate the two persons had an intimate familial relationship giving rise to a loss of consortium claim. *Wachocki v. Bernalillo County Sheriff's Dept.*, 2010-NMCA-021, 147 N.M. 720.

138.    Guadalupe Mota has been in a domestic partnership relationship with Vicente Villela for more than seven years and the relevant factors indicate she and Vicente Villela had an intimate familial relationship that gives rise to a loss of consortium claim on her behalf.

139.    Guadalupe Mota and Vicente Villela lived in the same household; she gave birth to his two minor children; the two of them made common contributions to a life together; the two of them relied upon each other for financial support and dependence; they had a strong emotional reliance with each other, and in all manners for all practical purposes Guadalupe Mota has been the wife of Vicente Villela.

140.    Due directly to the actions of the Corrections Officer Defendants that resulted in the death of Vicente Villela, Guadalupe Mota has been deprived of the familial relationship interest with Vicente Villela for the remainder of her natural life.

141.    Due directly to the actions of the Corrections Officer Defendants that resulted in the death of Vicente Villela, the minor children Abril Sofia Villela and Julio Vicente Villela have been deprived of the familial father-child relationship interest with Vicente Villela for the remainder of their natural life.

142.    Guadalupe Mota and the minor children Abril Sofia Villela and Julio Vicente Villela are each entitled to an award of loss of consortium damages, due directly to the actions of the Corrections Officer Defendants.

### Count VI
### Punitive Damages

143.    Plaintiff incorporates the proceeding paragraphs as if set forth herein in full.

144.    At all times pertinent hereto, the Corrections Officer Defendants were acting within the scope of their employment.

145.    The Corrections Officer Defendants acted with either reckless, callous or deliberate indifference to the clearly established constitutional rights of Vicente Villela.

146.    The conduct of the Corrections Officer Defendants was malicious, reckless, wanton and/or in bad faith.

147.    Punitive damages should be awarded against each of the Corrections Officer Defendants.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

1.  Enter Judgment in favor of Plaintiffs on all counts; and,

2.  Award statutory and compensatory damages in an amount as yet undetermined, jointly and severally against all Defendants; and,

3.  Award punitive damages in an as yet determined amount severally against the individually named Corrections Officer Defendants; and

4.  Under 42 U.S.C. §1988(b), award Plaintiffs their reasonable attorneys fees incurred for enforcing Vicente Villela's Constitutional rights under 42 U.S.C. §1983; and,

5.  Award Plaintiffs their reasonable attorneys fees and costs incurred as permitted under New Mexico law; and

6.  Enter pre- and post- judgment interest to the maximum extent as allowed by law; and

7.  Enter such other and further relief as the Court deems just and appropriate.

Respectfully Submitted,
Lakins Law Firm, P.C.

_____
Charles N. Lakins, Esq.
PO Box 91357
Albuquerque, NM 87199
(505) 404-9377