IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ADAM BAKER, et al.,

      **Plaintiffs,**

vs.                                                        Civ. No. 19-805 JCH/JHR

BERNALILLO COUNTY, et. Al.,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the *Motion for Sanctions* [Doc. 101] filed by Plaintiff Adam Baker as personal representative of the wrongful death estate of Vicente Antonio Villela. Plaintiff asks for sanctions against attorney Charles Lakins for a motion he filed in a state court case that is closely related to this closed federal case. Mr. Lakins has filed a response [Doc. 102], and Plaintiff has filed his reply. [Doc. 103]. Because Plaintiff is asking this Court to sanction attorney conduct that occurred in state court, the motion should be denied.

## PROCEDURAL BACKGROUND

In July of 2019, Sandra Villela filed a claim in state district court against Bernalillo County and nine corrections officers at the Bernalillo County Metropolitan Detention Center for the February 2, 2019, death of her brother, Vicente Antonio Villela. Doc. 1-1. She asserted claims for violation of the New Mexico Tort Claims Act, for wrongful death, and for violation of the decedent's constitutional rights pursuant to 42 U.S.C. § 1983. *Id*. In September of 2019, the defendants removed the case to this Court. Doc. 1.

It soon became clear that the decedent's family members had a dispute regarding the representation of his estate. In October of 2019, at the behest of the decedent's son and only adult offspring, Adam Baker filed a motion for leave to intervene and substitute as Plaintiff for Sandra Villela. Doc. 12. In the motion, Baker noted that in March of that year Judge Beatrice Brickhouse of the Second Judicial District Court had appointed him personal representative of the decedent's wrongful death estate under the New Mexico Wrongful Death Act. *Id*. at 2. Baker asserted that although he had begun an investigation into decedent's death, Sandra Villela and her counsel, Charles Lakins, had "rushed" to the state courthouse to file the wrongful death complaint referenced above without giving notice to Baker in an attempt to "hijack the claims arising from the wrongful death of Vicente Antonio Villela." *Id*. at 3. Thus began the battle for control of the wrongful death estate between decedent's adult son on the one hand, and decedent's sister and former partner[1] on the other.

The battle was fought on multiple fronts. First, Sandra Villela (via Mr. Lakins) challenged Judge Brickhouse's ruling appointing Adam Baker as personal representative of the wrongful death estate. Doc. 26 at 3. Second, on July 24, 2019, Sandra Villela filed an application in probate court for "informal appointment as a special administrator of the probate estate." *Id*. Decedent's adult son objected to the appointment and requested an order restraining the decedent's former partner, Guadalupe Mota, from performing any acts on behalf of the estate. Third, Sandra Villela filed the state court complaint in this case as "special administrator and personal representative for

---

[1] According to the Court's order [Doc. 26] deferring ruling on the motion to intervene, Sandra Villela was allied with Guadalupe Mota, the decedent's girlfriend and mother of his two minor children.

the wrongful death estate." Doc. 1-1. Also listed on the caption as a plaintiff was Guadalupe Mota, individually and on behalf of her children. *Id*.

Judge Brickhouse recused herself, and the matter of the wrongful death personal representative was transferred to Judge Lopez in New Mexico probate court. As such, Judge Lopez presided over the issues of both the wrongful death and the probate personal representatives. Judge Lopez entered an order confirming that Adam Baker, not Sandra Villela, was the wrongful death personal representative for the decedent's wrongful death estate. Doc. 28-1. The state court also concluded that as wrongful death personal representative, Baker should take on the litigation responsibilities of the probate personal representative as well, and therefore he would be in charge of pursuing both state wrongful death and federal civil rights claims in court. *Id*. at ¶ 17-18. The state court noted that "Mr. Lakins exceeded his authority in attempting to represent the statutory beneficiaries for the Tort and Wrongful Death claims . . ." Doc. 28-1 at ¶ 10. As a result of this order, the parties stipulated to having Adam Baker substituted for Sandra Villela and to Baker acting as the personal representative to pursue all state and federal claims arising from decedent's death. Doc. 28 at 2. They also stipulated that Charles Lakins would continue to represent Guadalupe Mota on her loss of consortium claim, which was brought as part of the wrongful death case. *Id*. Consequently, the U.S. magistrate judge (who was the presiding judge in this case at the time) entered an order confirming that Adam Baker would act as personal representative for decedent's wrongful death estate in this case. Doc. 29.

After this, litigation appeared to proceed normally. Plaintiffs amended their complaint, defendants answered, and the parties conducted discovery. Eventually, at a settlement conference held by the magistrate judge, the parties reached a settlement of the wrongful death claims pending appointment of a guardian ad litem ("GAL") for decedent's minor children. Doc. 62. In addition,

Ms. Mota negotiated a settlement and dismissal of her loss of consortium claims, which were separate from the wrongful death estate. Then, the case was transferred to the undersigned Senior U.S. District Judge Court as the presiding judge. Doc. 63. As is customary with settlements involving minors, upon motion by Mr. Baker and the defendants the Court appointed a GAL [Doc. 65] and entered various stipulated orders of dismissal submitted by the parties. *See, e.g.,* Docs. 73, 74, 75, 76, 77, 78, 80, and 81. Upon dismissal of her separate wrongful death claims, Ms. Mota was no longer a party to the case.

However, the battle for control of the wrongful death proceeds was not over. Ms. Mota (via her attorney, Charles Lakins) filed a Notice of Objections [Doc. 82] to the wrongful death settlement, in which she accused Mr. Baker of being uncooperative with her and argued that his conduct was prejudicial to the interests of the wrongful death beneficiaries. She asked this court to remand the case to the state court for reexamination of his appointment as personal representative. Second, she argued that the New Mexico Tort Claims Act's $400,000 recovery cap applies to wrongful death claims, and therefore any amounts above that received for a wrongful death should belong to the probate estate. As a result, she argued that the case be remanded to state court so that "all settlement proceeds above the statutory tort limit" could be distributed through probate. Finally, she objected to payment of a 35% contingency fee to the attorneys representing the wrongful death estate. At the same time, the GAL submitted her detailed report recommending that the Court approve the proposed settlement, as well as disbursement and allocation of the settlement funds which would be invested with New York Life and administered by Zia Trust, Inc., as independent trustee. Docs. 83, 85, 87. Ms. Mota filed a written objection to this plan. Doc. 88.

On September 30, 2020, the magistrate judge held a fairness hearing at which all parties were represented. Doc. 86. Shortly thereafter, the magistrate judge entered his Proposed Findings and Recommended Disposition [Doc. 91]. He recommended that the Court adopt the settlement by Mr. Baker on behalf of the decedent's wrongful death estate, overrule Ms. Mota's objections, and grant the motion to approve the settlement. The magistrate judge also found that Ms. Mota's continued objection to Mr. Baker's authority and status as wrongful death personal representative was frivolous and potentially sanctionable:

> Ms. Mota's continued objection to Mr. Baker's status as Wrongful Death Personal Representative is, by now, frivolous. The state court unambiguously upheld Mr. Baker's appointment in February and Ms. Mota has presented nothing to show that Mr. Baker has acted against the interests of the statutory beneficiaries. Because the issue of Mr. Baker's appointment was conclusively established months before Ms. Mota's present objections, Ms. Mota's counsel [Charles Lakins] potentially could be sanctioned under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings in this case.

Doc. 91 at 24-25.

None of the parties objected to the magistrate judge's recommendation. However, despite the fact that her loss of consortium claims were settled and she was no longer a party to the wrongful death case, Ms. Mota filed objections [Doc. 95] via her counsel, Mr. Lakins. Although it recognized that it was not required to do so, the Court considered Ms. Mota's objections to the magistrate judge's recommendation. In a Memorandum Opinion and Order [Doc. 98], the Court overruled Ms. Mota's objections and adopted the magistrate judge's proposed finding and recommended disposition. As a result, the Court approved the wrongful death settlement and dismissed the wrongful death action, bringing an end to the substantive issues in this federal case.

Approximately nine months after the conclusion of this federal case, Ms. Mota (again via Charles Lakins) filed a motion in the state court probate case. Doc. 101 at 2; *see also Motion to*

*Require Disbursements from Trusts, or to Reform Trusts, or Alternatively to Replace Trustee,* D-202-PB-2019-00407, Doc. 101-1. In that motion, Mr. Lakin took issue with the way the proceeds from the wrongful death case were being handled. On behalf of Ms. Mota, he objected to both the manner in which trust documents were written and the way funds were administered by Zia Trust. *Id*. Specifically, he complained that Zia Trust refused to distribute funds to Ms. Mota for the maintenance and support of the children (except for emergency medical costs) before they turned 18 years of age. Doc. 101-1 at 3-4. Accordingly, in the motion Ms. Mota asks the Court to require that a monthly distribution be made from the trusts, or that the language of the trusts be reformed, or that Zia Trust be replaced with an alternate trustee. *Id*. at 4-5. In his response, Mr. Baker argued that the motion was not properly before the probate court because it related to trusts established as part of the court-approved settlement in this federal wrongful death case. Doc. 101-2 at 1.

## **DISCUSSION**

Adam Baker, as personal representative of the wrongful death estate, asks the Court to impose sanctions on attorney Charles Lakins under 28 U.S.C. § 1927. Baker contends that Lakins has a history of filing frivolous pleadings in both this federal wrongful death case as well as in the related state court probate and PR appointment proceedings. In addition, he argues that the motion Lakins filed in state district court nine months after the conclusion of this case attempts to relitigated issues already decided in both the state court and this Court, thereby making it vexatious and unreasonable. Therefore, he asks this Court to sanction Lakins. According to Baker, the motion "seeks to undo protections put in place by this Court for the benefit of the children J.V. and A.V.," and should not have been filed in the probate case because it has "necessitate[ed] yet again a multiplicity of filings and proceedings." Doc. 101 at 2. Baker asserts that Lakins has done so

"[d]espite earlier warnings by this Court and Judge Lopez of the Second Judicial District Court."

*Id*.

> Section 1927 provides:
>
> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

This statute "is a natural outgrowth of the inherent authority of a court to assess costs and attorney's fees . . . against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Dreiling v. Peugeot Motors of Am., Inc*., 768 F.2d 1159, 1164-65 (10th Cir. 1985) (quotation omitted). Under 28 U.S.C. § 1927, an attorney who unreasonably multiplies the proceedings in any case may be personally liable for the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct. *Danielson-Holland v. Standley & Assocs., LLC*, 512 F. App'x. 850, 853 (10th Cir. 2013) (unpublished). "Section 1927 focuses on whether an attorney's conduct 'imposes unreasonable and unwarranted burdens on the court and opposing parties.'" *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987). Sanctions under § 1927 are appropriate "when an attorney acts recklessly or with indifference to the law," *id*.; is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or when the entire course of the proceedings is unwarranted. *Steinert v. Winn Grp., Inc*., 440 F.3d 1214, 1221 (10th Cir. 2006). Courts consider an attorney's actions under the standard of objective bad faith. *Braley*, 832 F.2d at 1512. Bad faith "does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar assessment of attorneys' fees." *Mark Indus., Ltd. v. Sea Captain's Choice, Inc*., 50 F.3d 730, 732 (9th Cir. 1995).

7

In this case, it appears that Mr. Lakins has filed a motion of questionable merit in state court seeking to relitigate issues relating to the wrongful death estate, personal representative, and trusts that have already been litigated and decided in this federal court. However, to the extent his conduct may be sanctionable, it did not occur in this case or before this Court. Rather, Mr. Lakins filed his motion in a related state probate proceeding. Mr. Baker has cited no authority that supports the conclusion that a federal court can use 28 U.S.C. § 1927 to sanction an attorney for actions taken in a state court, and this Court has located no such authority. Therefore, the question of whether Mr. Lakins should be sanctioned for conduct in state court should be left for the presiding judge in that case—he is in the best position to determine whether sanctions are an appropriate response to actions taken in his court.

**IT IS THEREFORE ORDERED** that the *Motion for Sanctions* [Doc. 101] is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE